## POLLOCK and wife *vs.* KEASBEY and MAN.

Where, under a written agreement entered into by the mortgagees and mortgagors, trustees were appointed to take title to the lands, by purchase at a sheriff's sale under a foreclosure by one of the mortgagees, and to sell them, in accordance with a given plan, and upon certain terms and conditions detailed in the agreement, the sales made by the trustees will not be set aside, at the instance of the mortgagors, on the ground that the property was worth much more (according to the speculative valuations of witnesses) than it brought, and that the times and terms of the sales were prejudicial, where it appears that they were made in accordance with the

terms of the agreement, and with powers subsequently vested in the trustees by all the parties in interest, in the exercise of a wise and legal discretion, and for the best interest, under the circumstances, of all concerned.

On bill, answer, and proofs. Application for injunction.

*Mr. J. F. McGee*, for complainants.

*Mr. A. Q. Keasbey*, for defendants.

THE CHANCELLOR.

The complainants seek to set aside the sale made by the defendants, trustees, of certain premises situate between Newark and Elizabeth.

A suit which was pending in this court for the foreclosure of a certain mortgage upon the premises for $100,000, gold, and interest, given by the complainants to the firm of Drexel, Morgan & Co., to which suit certain other mortgagees of the same property were made defendants, terminated about the 14th of April last, in an arrangement, evidenced by a written agreement between all the parties, for the ultimate disposition of the mortgaged premises, in a manner best calculated to realize their full value.

The plan adopted was a sale by trustees, who should be empowered to take title by purchase at once from the sheriff, under the execution in the suit above referred to, and thereafter cause the premises to be sold, under the direction of a firm of auctioneers of the city of New York, named in the agreement, or some other prominent real estate auctioneer, and sell in such parts as might seem to them and the auctioneer to be best. The sale was to take place during the month of June, 1872. The trustees were to make the necessary arrangements and agreements with the auctioneer, who should conduct the sale, and make all proper preparations therefor, in the same manner as he had been accustomed to do in making sales of a like character, in the city of Elizabeth and vicinity. The trustees were to superintend and personally be present at the sale or sales, and when, in their

judgment, or in that of the auctioneer, the property should not be bringing sufficiently remunerative prices, they were to stop the sale, and adjourn to a later day, when it should be renewed in like manner, and so on until the premises should all be sold, or so much thereof as should be necessary to satisfy the purposes of the agreement; provided that such sales should not be delayed beyond the 1st day of July, then next. The sale was to be upon the following terms, as regards payments : twenty-five per cent. of the purchase money to be paid in cash ; fifty per cent., at the purchaser's option, by first mortgage, payable at or before one year from date ; and the balance, twenty-five per cent., at the purchaser's option, by second mortgage, payable at or before two years from date. All the terms and conditions of the sale were to be according to the usual custom of the auctioneer. The proceeds of sale were to be disposed of by the trustees, as follows : *First.* Out of the cash receipts, to pay the taxed costs of the suit above referred to, the sheriff's execution fees therein, the conveyancer's fees, and auctioneer's expenses in carrying out the auction sale: *Second.* To pay off the existing mortgages on the premises, prior in lien to the mortgage encumbrance of Drexel, Morgan & Co. *Third.* To pay the balance of the cash to the last named firm, in extinguishment of their claims, secured by their mortgage, as far as the cash would go ; then to pay the balance still due to them, after the application of such cash proceeds, by a sufficient number of the first or second mortgages, or of both, at their option, as they should select. *Fourth.* To pay Addison Brown the amount of his mortgage, with and from any remaining first or second mortgages, at his option. *Fifth.* To pay Morton, Bliss & Co. the amount due on their mortgage, out of any of the first or second mortgages then remaining. *Sixth.* To pay, out of the balance of the remaining mortgages, $3500 to Drexel, Morgan & Co., for their expenses, counsel fees, &c., in the suit above referred to, and in carrying out the arrangement ; and such further sum as might be required, for the fees and charges of the trustees, under the agreement.

Pollock *v.* Keasbey and Man.

Under this agreement, Messrs. A. Q. Keasbey and E. A. S. Man, the former the solicitor of Drexel, Morgan & Co., and the latter the counsel of Addison Brown (and in making the arrangement above set forth, attorney of the complainants in this suit), were appointed trustees, and entered upon their duties accordingly.

In pursuance of the provisions of the agreement in that behalf, the mortgaged premises were sold by the sheriff, and purchased by the trustees.

The trustees, before the sale by the sheriff to them, proceeded to advertise the property, and to make such arrangements as would enable them to execute their trust to the best advantage of all concerned. They advertised the property to be sold on the 27th day of June, 1873. On that day, after selling a considerable portion, the sale was adjourned, at the request of Messrs. Man, Brown, and Pollock, for the reason that the property was not bringing prices satisfactory to them. Mr. Keasbey, the other trustee, was opposed to the adjournment, upon the ground that the property was bringing very good prices, and because the trustees were bound, by the agreement under which they were acting, to close the sale of the property before the 1st day of July, then next. An agreement, however, was entered into between the parties, all of whom were present in person, or by their representatives, by which the sale was adjourned to the 10th day of July. Further advertisement was made, and on the 10th the sale was resumed, but the attendance was small, and the bidders but few, and after selling two or three lots, at low and unsatisfactory prices, the sale was stopped, at the instance of Mr. Man, and a further adjournment requested. This was acceded to, but with the express agreement and understanding, however, that the adjournment should be a final one, and to that end, should be to such a day as should be fixed by Mr. Pollock himself, or by the auctioneer, at his instance, and that on the day which should be so fixed, the property should be sold, absolutely and without reservation.

On the last named day, the efforts to procure the attendance of persons to purchase the property having been renewed, and continued up to the day of sale, the trustees proceeded to sell the balance of the property. After selling a few lots separately, there remained a considerable tract of land—about eleven acres in all—upon which was a mortgage of about $27,500, held by Mahlon Mulford. The prices which had been obtained for the property which had been sold, in separate lots, on that day, were not such as, in the opinion of the trustees, to justify them in putting up the eleven acres in lots, or small parcels, and they therefore, on consultation, agreed that the tract should be set up in one parcel, and sold, subject to the Mulford mortgage, and the taxes and assessments to which it was subject. The taxes and assessments amounted to about $20,000. These eleven acres, it will be seen, were encumbered by mortgage and tax and assessment liens, to the amount of about $47,000. The tract was accordingly put up in one parcel, and was purchased by a Mr. Thomas, acting for Drexel, Morgan & Co., at $1000 over and above the encumbrances.

On the day of the first sale, a part of the property, situate on Broad street and North avenue, was put up for sale, free from taxes and assessments. This was done because it would thus sell better, and, as insisted by the trustees, by and with the concurrence and consent of all parties. The entire amount realized by the sales, was about $80,000.

The ground on which the complainants ask that the sale be set aside is, inadequacy of price; to which they insist, the action of the trustees, in selling the lots before referred to, on Broad street and North avenue, free from taxes and assessments, and in selling the tract of eleven acres in one parcel, together with a change in the terms of sale made on the ground, on the first day, largely conduced. By the change of terms just referred to, the terms of sale as to credit, which had been stated in the pamphlet published by the trustees to advertise the property, as twenty-five per cent. in one year, and fifty per cent. in two years, were reversed in order to

comply with the requirements of the agreement in that respect. The statement of the terms in the pamphlet was erroneously made, by mistake, and Drexel, Morgan & Co. refused to permit them to stand as in the pamphlet.

No fraud is charged upon the trustees in this transaction. Their integrity and fairness of intention are in no wise impugned or questioned. In putting the property into market, they complied with their obligations to the fullest extent. If there was a disappointment as to the prices the property brought, it was not attributable to any omission of theirs, in this respect. Their expenditures in this direction amounted to over $4000, and they appear to have been very judiciously made. All the appliances for promoting and insuring the success of the sale were called into requisition, and there is no room for any complaint on this score. On the first day there were present, drawn there by the means and appliances which the trustees had used for the purpose, a large assembly of persons, numbering five or six hundred; and sales were made to the amount of over $33,000. The property so sold is valued, in the estimate of one of the complainants' witnesses, at about $45,000, and none of them estimate it as being worth more than $63,000.

It may be remarked, in passing, that, judging from the results of subsequent efforts to sell the property, it may well be doubted whether it would not have been best to have taken the advice, and followed the judgment of Mr. Keasbey, and to have completed the sale of the property on that day.

The sale of the 10th of July was properly advertised. The trustees made very special efforts to attract persons to the sale of the 23d of July, and were so successful, that there was a large attendance. The property consisted of about twenty-five acres of land, lying between Newark and Elizabeth, about a mile from the latter city, unimproved, except by the paving of part of the streets on which it is located. There was not, and had not been, for two years, any demand for vacant lots in that vicinity. The complainants value the property at about $600,000, and state that they have never

heard any one value it at less than $250,000. · Their witnesses, however, examined with reference to this motion, value it variously at from $153,000 to $254,000. It is noticeable that none of them goes so far as to say that such prices could now be got for it. But they all admit that there is no demand for such property; that the market is, and has been very dull; that the prices which they fix in their valuation could not have been obtained at the time of the sale, could not now be got, nor is there any prospect of getting them in the near future. On cross-examination, they state the value of the property, by the acre, to be from $4000 to $5000, subject to the assessments; but it does not appear that, in their judgment, such prices could be got. The valuations of these witnesses are, manifestly, merely speculative. The efforts which were made by the trustees to sell this property, and their results, satisfy my mind that the prices fixed by these witnesses are very far beyond what could be realized.

But the complainants allege that the property brought smaller prices than it otherwise would have brought, through the change of the terms of sale on the first day. This, it is claimed, had a damaging effect upon the sale. I am not able to see how it could have prejudiced it. The more liberal the terms, the greater the number of bidders who would be attracted to the sale. It is true, there are in the case, opinions of persons on this subject, to the effect that this change had an injurious effect upon the bidders; but the only instance adduced is that of a person who, in his evidence in this suit, gave, as his reason for ceasing to bid, one entirely different from this. The change in the terms was made because the trustees were bound by the agreement, and Drexel, Morgan & Co. insisted, as they had a right to insist, on the terms fixed by it.

The change made upon the ground, on the first day, in respect to the encumbrance of taxes and assessments upon part of the property, was, it is insisted, also prejudicial to the

sale.  In the first place, what was done in this respect, was done, as it appears, by consent of all parties in interest, and for their mutual benefit; and in the next place, the change of which complaint is made, was evidently and undoubtedly promotive of the interests of all parties.

The remaining ground of complaint is, that the tract of eleven acres was put up as a whole.  The prices which the part of the property which had been sold in parcels that day, had brought, were so low as to satisfy the trustees, and I think reasonably, that they would incur risk in selling these eleven acres free of the Mulford mortgage.  At the prices of that day, it was evidently very doubtful whether it would bring, if sold in parcels, enough to cover the amount of that mortgage.  The trustees would have been bound, if they had sold it in lots or small parcels, free from the mortgage, to have conveyed accordingly, and for any deficit between the prices realized and the amount due on that mortgage, must have had recourse to the funds obtained from the sales of the former days.  They, therefore, in the exercise of their discretion, and upon due consultation, as appears from the evidence, determined to put up the property as a whole, subject to the Mulford mortgage, and to the taxes and assessments upon it.  They were clothed, by the agreement, with discretion as to the manner in which the whole property should be sold.  They were to sell it in such parcels as might seem to them and the auctioneer to be best.  They appear to have acted with deliberation, and to have exercised their discretion with a disposition to deal fairly by all parties.

It is insisted that they ought, in the exercise of a legal discretion, to have adjourned the sale when it was found that the property would not bring prices to correspond with the expectations of the parties to the agreement.  But, on this head, there are two considerations.  *First.*  They were bound, by the terms of the trust, to close the sales in June, and they had adjourned the sale to the 10th and 23d of July, only by consent of all the parties; and on the last named day, the consent of all parties, to a further adjournment,

could not be got. A part of the agreement, in reference to the last adjournment, was, that on the 23d, the property should be sold at the best price it would bring, whatever that might be, and that the sale of that day should be of the whole remainder of the property, without reservation. In the next place, there was no prospect of better prices at a future day.

The trust was a trust to sell; not a trust to hold for a rise. The obligation of the trustees was to sell for the best price that could be got with proper public notice. The prices which the property brought are the best evidence of what it was worth. It was worth what it would bring, and no more. If the prices have not equalled the expectation of the parties, it is to be attributed to the state of the real estate market.

I do not think that any claim can be laid to the equitable interference of the court, upon the ground of inadequacy of price. Not only were the sales conducted fairly, but the mortgagees, Drexel, Morgan & Co., disclaiming any desire to reap any undue advantage from their purchases, proffer themselves ready, not only to convey all the land bought by them, but to purchase and convey all that was bought by other persons not in their interest, on receiving the amount due them on their mortgage, and their reasonable, lawful disbursements in the premises. The mortgagees, whose claims are subsequent to theirs, although the claims of those mortgagees were not reached by the proceeds of the sales, do not complain of the proceedings of the trustees.

To my mind, there is no reason for setting aside the sales. An expense of nearly $5000 has been incurred in advertising and bringing the property into market. On a re-sale, a further, and perhaps like amount, must be expended for the same purpose. I see no prospect of aiding the complainants by a re-sale of this property; indeed, after a very careful consideration of the whole subject, I think there is reason to doubt whether the property could, within a reasonable time, be sold again to as good advantage.

The injunction is denied.